## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| | ) |
| EXTRACTION OIL & GAS, Inc., *et al.*,[1] | ) Case No. 20-11548 (CSS) |
| | ) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

## GLOBAL NOTES AND STATEMENT OF LIMITATIONS, METHODOLOGIES, AND DISCLAIMERS REGARDING THE DEBTORS' SCHEDULES OF ASSETS AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS

The Schedules of Assets and Liabilities (collectively with attachments, the "Schedules") and the Statements of Financial Affairs (collectively with attachments, the "Statements," and together with the Schedules, the "Schedules and Statements"), filed by the above-captioned debtors and debtors in possession (collectively, the "Debtors"), were prepared pursuant to section 521 of title 11 of the United States Code (the "Bankruptcy Code") and rule 1007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") by the Debtors' management, with the assistance of the Debtors' advisors, and are unaudited.

These Global Notes and Statement of Limitations, Methodologies, and Disclaimers Regarding the Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs (the "Global Notes") are incorporated by reference in, and comprise an integral part of, each Debtor's respective Schedules and Statements, and should be referred to and considered in connection with any review of the Schedules and Statements.

While the Debtors' management has made reasonable efforts to ensure that the Schedules and Statements are as accurate and complete as possible under the circumstances, based on information that was available at the time of preparation, inadvertent errors, inaccuracies, or omissions may have occurred or the Debtors may discover subsequent information that requires material changes to the Schedules and Statements. Because the Schedules and Statements contain unaudited information, which is subject to further review, verification, and potential adjustment, there can be no assurance that the Schedules and Statements are complete.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Extraction Oil & Gas, Inc. (3923); 7N, LLC (4912); 8 North, LLC (0904); Axis Exploration, LLC (8170); Extraction Finance Corporation (7117); Mountaintop Minerals, LLC (7256); Northwest Corridor Holdings, LLC (9353); Table Mountain Resources, LLC (5070); XOG Services, LLC (6915); and XTR Midstream, LLC (5624). The location of the Debtors' principal place of business is 370 17th Street, Suite 5300, Denver, Colorado 80202.

The Schedules and Statements have been signed by Tom L. Brock, Vice President, Chief Accounting Officer of Debtor Extraction Oil & Gas, Inc. Accordingly, in reviewing and signing the Schedules and Statements, Mr. Brock necessarily relied upon the efforts, statements, and representations of the Debtors' other personnel and advisors. Mr. Brock has not (and could not have) personally verified the accuracy of each such statement and representation, including, but not limited to, statements and representations concerning amounts owed to creditors, classification of such amounts, and respective creditor addresses.

The Global Notes supplement and are in addition to any specific notes contained in each Debtor's respective Schedules or Statements. Furthermore, the fact that the Debtors have prepared Global Notes or specific notes with respect to each of the individual Debtor's Schedules and Statements and not to those of another should not be interpreted as a decision by the Debtors to exclude the applicability of such Global Notes or specific notes to any of the Debtors' other Schedules and Statements, as appropriate.

For the avoidance of doubt, the Debtors reserve all of their rights to amend and supplement the Schedules and Statements as may be necessary or appropriate, but the Debtors and their agents, attorneys and financial advisors expressly do not undertake any obligation to update, modify, revise, or re-categorize the information provided herein, or to notify any third party should the information be updated, modified, revised, or re-categorized, except as required by applicable law or order of the Bankruptcy Court.

Disclosure of information in one or more Schedules, one or more Statements, or one or more exhibits or attachments to the Schedules or Statements, even if incorrectly placed, shall be deemed to be disclosed in the correct Schedules, Statements, exhibits, or attachments.

1. ***Description of Cases***. On June 14, 2020 (the "<u>Petition Date</u>"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>"). The Debtors' chapter 11 cases are jointly administered for procedural purposes only under the lead case caption *In re Extraction Oil & Gas, Inc., et al.*, Case No. 20-11548 (CSS) (Bankr. D. Del.) [Docket No. 79]. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors have not been substantively consolidated and accordingly, each Debtor has filed its own Schedules and Statements. On June 30, 2020, the United States Trustee for the District of Delaware appointed a statutory committee of unsecured creditors pursuant to section 1102(a)(1) of the Bankruptcy Code [Docket No. 155].

2. ***Global Notes Control***. Disclosure of information in one or more Schedules, one or more Statements, or one or more exhibits or attachments to the Schedules or Statements, even if incorrectly placed, shall be deemed to be disclosed in the correct Schedules, Statements, exhibits, or attachments. In the event that the Schedules and Statements differ from the Global Notes, the Global Notes shall control.

3. ***"As Of" Information Date***. The asset information provided herein, except as otherwise noted, represents the asset data of each Debtor as of May 31, 2020, the date of the Debtors'

month end closure to their balance sheet, and the liability data of each Debtor as of the close of business on the Petition Date. All other information including trade liabilities and principal and accrued interest on funded debt are provided as of the Petition Date. Amounts ultimately realized may vary from net book value (or whatever value was ascribed) and such variance may be material. Accordingly, the Debtors reserve all of their rights to amend or adjust the value of each asset set forth herein. In addition, the amounts shown for total liabilities exclude items identified as "unknown," "disputed," "contingent," "unliquidated," or "undetermined," and, thus, ultimate liabilities may differ materially from those stated in the Schedules and Statements.

4. ***Reservations and Limitations***. Commercially reasonable efforts were made to prepare and file complete and accurate Schedules and Statements. However, as noted above, inadvertent errors or omissions may exist. The Debtors reserve all rights to amend and supplement the Schedules and Statements as may be necessary or appropriate but do not undertake any obligation to do so, except as required by applicable law. Nothing contained in the Schedules and Statements constitutes a waiver of any of the Debtors' rights or an admission of any kind with respect to these chapter 11 cases, including, but not limited to, any claims against the Debtors, any rights or claims of the Debtors against any third party or any issues involving substantive consolidation, equitable subordination, or defenses or causes of action arising under the provisions of chapter 5 of the Bankruptcy Code or any other relevant applicable bankruptcy or non-bankruptcy laws to recover assets or avoid transfers. Any specific reservation of rights contained elsewhere in the Global Notes does not limit in any respect the general reservation of rights contained in this paragraph. Nothing contained in the Schedules and Statements or the Global Notes is intended as, or should be construed as, an admission or stipulation of the validity of any claim against the Debtors, any assertion made therein or herein, or a waiver of the Debtors' rights to dispute any claim or assert any cause of action or defense against any party.

5. ***Net Book Value of Assets.*** Unless otherwise indicated, the Debtors' Schedules and Statements reflect net book values as of May 31, 2020. For the avoidance of doubt, nothing contained in the Schedules and Statements is indicative of the Debtors' enterprise or market value. Book values of assets prepared in accordance with GAAP generally do not reflect the current performance of the assets and may differ materially from the actual value and/or performance of the underlying assets. As such, the value listed in these Schedules and Statements cannot be, and was not, used to determine the Debtors' enterprise valuation.

6. ***Recharacterization and Classifications***. The Debtors have made commercially reasonable efforts to correctly characterize, classify, categorize, and designate the claims, assets, executory contracts, unexpired leases, and other items reported in the Schedules and Statements. However, the Debtors may have improperly characterized, classified, categorized, designated, or omitted certain items due to the complexity and size of the Debtors' business. Accordingly, the Debtors reserve all of their rights to recharacterize, reclassify, recategorize, redesignate, add, or delete items reported in the Schedules and Statements at a later time as necessary or appropriate, including, without limitation, whether contracts or leases listed herein were deemed executory or unexpired as of the Petition Date and remain executory and unexpired postpetition.

3

7.  ***Classifications***.  Listing (i) a claim on Schedule D as "secured," (ii) a claim on Schedule E/F as "priority" or "unsecured," or (iii) a contract on Schedule G as "executory" or "unexpired" does not constitute an admission by the Debtors of the legal rights of the claimant or contract counterparty or a waiver of the Debtors' rights to disallow, subordinate, recharacterize or reclassify such claim or contract.

8.  ***Claims Description***.  Any failure to designate a claim in the Schedules and Statements as "contingent," "unliquidated," or "disputed" does not constitute an admission by the Debtors that such claim or amount is not "contingent," "unliquidated," or "disputed."  The Debtors reserve all of their rights to dispute, or to assert offsets or defenses to, any claim reflected on their Schedules or Statements on any grounds, including, but not limited to, amount, liability, priority, status, or classification, or to otherwise subsequently designate any claim as "contingent," "unliquidated," or "disputed."  Moreover, the Debtors reserve all of their rights to amend their Schedules and Statements as necessary and appropriate. Listing a claim does not constitute an admission of liability by the Debtors.

9.  ***Estimates and Assumptions***.  The preparation of the Schedules and Statements required the Debtors to make reasonable estimates and assumptions with respect to the reported amounts, including but not limited to, amounts of assets and liabilities, the amount of contingent assets and contingent liabilities on the date of filing the Schedules and Statements, and the reported amounts of revenues and expenses during the applicable reporting periods.  Actual results could differ materially from such estimates.  The Debtors reserve all rights to amend the reported amounts of assets and liabilities, contingent assets and contingent liabilities, and revenues and expenses to reflect changes in those estimates or assumptions.

10. ***Basis of Presentation***.  For financial reporting purposes, prior to the Petition Date, the Debtors prepared financial statements on a consolidated basis, which were audited annually.  Combining the assets and liabilities set forth in the Schedules and Statements would result in amounts that could be substantially different from financial information that would be prepared on a consolidated basis under Generally Accepted Accounting Principles ("GAAP").  Therefore, the Schedules and Statements do not purport to represent financial statements prepared in accordance with GAAP nor are they intended to reconcile fully with any consolidated financial statements prepared by the Debtors.  Unlike the consolidated financial statements, the Schedules and Statements reflect the assets and liabilities of each separate Debtor, except where otherwise indicated.  Information contained in the Schedules and Statements has been derived from the Debtors' books and records and historical financial statements.  Moreover, given, among other things, the uncertainty surrounding the collection and ownership of certain assets and the valuation and nature of certain liabilities, to the extent that a Debtor shows more assets than liabilities, this is not an admission that the Debtor was solvent as of the Petition Date or at any time before the Petition Date.  Likewise, to the extent a Debtor shows more liabilities than assets, this is not an admission that the Debtor was insolvent at the Petition Date or any time before the Petition Date.

11. ***Confidential or Sensitive Information***.  There may be instances in which certain information in the Schedules and Statements intentionally has been redacted due to, among

other things, concerns for the privacy of an individual.  In addition, the very existence of certain agreements is (by the terms of such agreements) confidential.  These agreements have been noted, however, as "Confidential" in the Schedules and Statements, where applicable.  The alterations or redactions are limited only to what the Debtors believe is necessary to protect the Debtor or the applicable third-party.

12.  ***Causes of Action***.  Despite their reasonable efforts to identify all known assets, the Debtors may not have listed all of their causes of action or potential causes of action against third-parties as assets in the Schedules and Statements.  The Debtors reserve all of their rights with respect to any claims or causes of action (including avoidance actions), controversy, right of setoff, cross claim, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity, demand, right, action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law (collectively, "Causes of Action") they may have, and neither the Global Notes nor the Schedules and Statements shall be deemed a waiver of any claims or Causes of Action or in any way prejudice or impair the assertion of such claims or Causes of Action.

In the ordinary course of their business, from time to time, the Debtors become involved in litigation and informal disputes among third parties because the Debtors may hold funds on account of mineral or other interests that are the subject of the dispute.  When such litigation or informal disputes arise, the Debtors treat the relevant funds as suspense funds.  Upon the conclusion or settlement of the litigation matter or informal dispute, as evidenced by entry of a court order or execution of a settlement agreement or similar evidence of properly cured title, or mutual informal agreement, the Debtors release the funds in question to the appropriate third party.  Because these funds may not be property of their estates, the Debtors do not believe they have any liability on account of such litigation, and such informal disputes are not included in the Schedules and Statements.

There are certain parties who may hold potential escheatment claims or claims for funds held in suspense against the Debtors.  These parties received notice of the Schedules, commencement of these chapter 11 cases, and the claims bar date.  However, such claims are not disclosed in the Schedules to the extent that the Debtors lack sufficient information about the escheatment.

13.  ***Paid Claims***.  Pursuant to certain orders of the Bankruptcy Court entered in these chapter 11 cases (the "First Day Orders"), the Debtors were authorized (but not directed) to pay, among other things, certain prepetition claims of employees, royalty holders, potential lien holders and taxing authorities.  Accordingly, these liabilities may have been or may be satisfied in accordance with such orders and, therefore, generally are not listed in the Schedules and Statements.  Regardless of whether such claims are listed in the Schedules and Statements, to the extent such claims are paid pursuant to an order of the Bankruptcy Court (including the First Day Orders), the Debtors reserve all rights to amend

or supplement the Schedules and Statements as is necessary or appropriate, or to take other action as is necessary and appropriate to avoid over-payment of, or duplicate payments for, any such liabilities.

14. **Liabilities**.  The Debtors have sought to allocate liabilities between the prepetition and postpetition periods based on the information and research that was conducted in connection with the preparation of the Schedules and Statements.  As additional information becomes available and further research is conducted, the allocation of liabilities between prepetition and postpetition periods may change.  The Debtors reserve the right to amend the Schedules and Statements as they deem appropriate in this regard.

15. **Excluded Assets and Liabilities**.  The Debtors have excluded certain categories of assets and liabilities from the Schedules and Statements and certain accrued expenses. The Debtors also have excluded rejection damage claims of counterparties to executory contracts and unexpired leases that have been or may be rejected (if any), to the extent such damage claims exist.  In addition, certain immaterial or *de minimis* assets and liabilities may have been excluded.  Finally, certain liabilities authorized to be paid pursuant to the First Day Orders are excluded from the Schedules and Statements.

16. **Intellectual Property Rights.**  Exclusion of certain intellectual property shall not be construed to be an admission that such intellectual property rights have been abandoned, have been terminated, otherwise have expired by their terms, or have been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction.  Conversely, inclusion of certain intellectual property shall not be construed to be an admission that such intellectual property rights have not been abandoned, have not been terminated, have not otherwise expired by their terms, or have not been assigned or otherwise.

17. **Property and Equipment**.  Unless otherwise indicated, owned property (including real property) and equipment are stated at net book value.  The Debtors may lease furniture, fixtures, and equipment from certain third-party lessors.  Any such leases are set forth in the Schedules and Statements.  Nothing in the Schedules and Statements is or shall be construed as an admission as to the determination as to the legal status of any lease (including whether any lease is a true lease or a financing arrangement), and the Debtors reserve all of their rights with respect thereto.

18. **Intercompany Payables and Receivables**.  The listing by the Debtors of any account between a Debtor and another Debtor is a statement of what appears in a particular Debtor's books and records and does not reflect any admission or conclusion of the Debtors regarding the allowance, classification, characterization, validity, or priority of such account.  The Debtors take no position in these Schedules and Statements as to whether such accounts would be allowed as a claim, an Interest, or not allowed at all.  The Debtors and all parties in interest reserve all rights with respect to such accounts.

19. **Estimates**.  To prepare and file the Schedules and Statements in accordance with the deadline established in these chapter 11 cases, management was required to make certain estimates and assumptions that affected the reported amounts of these assets and liabilities.

6

The Debtors reserve all rights to amend the reported amounts of assets and liabilities to reflect changes in those estimates or assumptions.

20.     *Currency*. All amounts are reflected in U.S. dollars.

21.     *Duplication*. Certain of the Debtors' assets, liabilities, and prepetition payments may properly be disclosed in multiple parts of the Statements and Schedules. To the extent these disclosures would be duplicative, the Debtors have determined to only list such assets, liabilities, and prepetition payments once.

22.     *Executory Contracts and Unexpired Leases*. Although the Debtors have made diligent attempts to properly identify the Debtor counterparty(ies) to each executory contract and unexpired lease on Schedule G, it is possible that more Debtor entities are a counterparty to certain executory contracts and unexpired leases on Schedule G than listed herein. The Debtors reserve all of their rights with respect to the named parties of any and all executory contracts and unexpired leases, including the right to amend Schedule G. In addition, although the Debtors have made diligent attempts to properly identify executory contracts and unexpired leases, the inclusion of a contract or lease on Schedule G does not constitute an admission as to the executory or unexpired nature (or non-executory or expired nature) of the contract or lease, or an admission as to the existence or validity of any claims held by the any counterparty to such contract or lease. Furthermore, while the Debtors have made diligent attempts to properly identify all executory contracts and unexpired leases, inadvertent errors, omissions, or over inclusion may have occurred.

23.     *Umbrella or Master Agreements*. Contracts listed in the Schedules and Statements may be umbrella or master agreements that cover relationships with some or all of the Debtors. Where relevant, such agreements have been listed in the Schedules and Statements only of the Debtor that signed the original umbrella or master agreement. This includes insurance policies and master service agreements which were signed by Extraction Oil & Gas, Inc. but cover other Debtors.

24.     *Leases*. The Debtors have not included the future obligations of any capital or operating leases in the Schedules and Statements. To the extent that there was an amount outstanding as of the Petition Date, the creditor has been included on Schedule E/F of the Schedules.

In the ordinary course of business, certain of the Debtors may enter into agreements titled as leases for property, minerals, or other property interests and equipment from third-party lessors for use in the daily operation of their business. Any known prepetition obligations of the Debtors pursuant to the same have been listed on Schedule F, the underlying lease agreements are listed on Schedule G, or, if the leases are in the nature of real property interests under applicable non-bankruptcy laws, on Schedule A. Nothing in the Schedules or Statements is, or shall be construed to be, an admission as to the determination of the legal status of any lease (including whether any lease is a true lease, a financing arrangement or a real property interest), and the Debtors reserve all rights with respect to such issues.

25. **Insiders**. The Debtors have attempted to include all payments made on or within 12 months before the Petition Date to any individual or entity deemed an "insider." As to each Debtor, an individual or entity is designated as an "insider" if such individual or entity, based on the totality of the circumstances, has at least a controlling interest in, or exercises sufficient authority over, the Debtor so as to unqualifiably dictate corporate policy and the disposition of corporate assets.

The listing or omission of a party as an insider for purposes of the Schedules and Statements is for informational purposes and is not intended to be, nor should it be, construed as an admission that those parties are insiders for purpose of section 101(31) of the Bankruptcy Code. Information regarding the individuals or entities listed as insiders in the Schedules and Statements may not be used for: (a) the purposes of determining (i) control of the Debtors; (ii) the extent to which any individual or entity exercised management responsibilities or functions; (iii) corporate decision-making authority over the Debtors; or (iv) whether such individual or entity could successfully argue that it is not an insider under applicable law, including the Bankruptcy Code and federal securities laws, or with respect to any theories of liability or (b) any other purpose.

Furthermore, certain of the individuals or entities identified as insiders may not have been insiders for the entirety of the 12-month period preceding the Petition Date, but the Debtors have included them herein out of an abundance of caution. The Debtors reserve all rights with respect thereto.

26. **Totals**. All totals that are included in the Schedules and Statements represent totals of all known amounts included in the Schedules and Statements. To the extent there are unknown, disputed, contingent, unliquidated, or otherwise undetermined amounts, the actual total may be different than the listed total.

27. **Unliquidated Claim Amounts**. Claim amounts that could not be quantified by the Debtors are scheduled as "unliquidated."

28. **Undetermined Amounts**. The description of an amount as "unknown," "disputed," "contingent," "unliquidated," or "undetermined" is not intended to reflect upon the materiality of such amount.

29. **Setoffs and Recoupments**. The Debtors routinely incur setoffs, recoupments and net payments in the ordinary course of business. Such setoffs, recoupments and nettings may occur due to a variety of transactions or disputes including, but not limited to, intercompany transactions, counterparty settlements, pricing discrepancies, credits, rebates, returns, refunds, negotiations, and/or disputes between the Debtors and their customers and/or suppliers. These normal, ordinary course setoffs, recoupments and nettings are common to the industry. Due to the voluminous nature of setoffs, recoupments and nettings, it would be unduly burdensome and costly for the Debtors to list each such transaction. Therefore, although such setoff, recoupment and other similar rights may have been accounted for when scheduling certain amounts, these ordinary course setoffs and recoupments are not independently accounted for, and as such, are or may be excluded from the Debtors' Schedules and Statements. In addition, some amounts listed in the

Schedules and Statements may have been affected by setoffs, recoupments or nettings by third parties of which the Debtors are not yet aware and/or of which the Debtors have approved to effectuate in the claims process of their chapter 11 cases. The Debtors reserve all rights to challenge any setoff and/or recoupment rights that may be asserted.

30.     *Credits and Adjustments*.   The claims of individual creditors for, among other things, goods, products or services are listed as amounts entered on the Debtors' books and records and may not reflect credits, allowances or other adjustments due from such creditors to the Debtors.   The Debtors reserve all of their rights respecting such credits, allowances and other adjustments.

31.     *Payments*.   Prior to the Petition Date, the Debtors maintained a cash management and disbursement system in the ordinary course of their businesses (the "Cash Management System") (as more fully described in the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Perform Intercompany Transactions and (II) Granting Related Relief* (the "Cash Management Motion") [Docket No. 4]).   Although efforts have been made to attribute open payable amounts to the correct legal entity, the Debtors reserve the right to modify or amend their Schedules and Statements to attribute any payments to a different legal entity, if appropriate.

32.     *Stock Options, Restricted Stock Awards and Restricted Stock Units.*   In the ordinary course of business, the Debtors award certain stock options, restricted stock awards and restricted stock units to employees as part of such employees' compensation.   Because these awards represent interests in the Debtors, not claims, the Debtors have not listed such restricted stock awards or restricted stock units in the Schedules and Statements.

33.     *Guaranties and Other Secondary Liability Claims*.   The Debtors have used their best efforts to locate and identify guaranties and other secondary liability claims (collectively, the "Guaranties") in their executory contracts, unexpired leases, debt instruments, and other such agreements; however, a review of these agreements, specifically the Debtors' leases and contracts, is ongoing.   Where such Guaranties have been identified, they have been included in the relevant Schedule for the Debtor or Debtors affected by such Guaranties.   The Debtors have reflected the Guaranty obligations for both the primary obligor and the guarantor with respect to their financings and debt instruments on Schedule G.   The Debtors believe that certain Guaranties embedded in the Debtors' executory contracts, unexpired leases, other secured financing, debt instruments, and similar agreements may exist and, to the extent they do, will be identified upon further review.   Therefore, the Debtors reserve their rights to amend the Schedules to the extent additional Guaranties are identified.

34.     *Mechanics' Liens*.   The property and equipment listed in the Schedules are presented without consideration of any mechanics', materialman's', or other similar statutory liens. Such liens may apply, and the Debtors reserve their right to dispute or challenge the validity, perfection, or immunity from avoidance of any lien purported to be perfected by a creditor.

**Specific Disclosures with Respect to the Debtors' Schedules**

35.  ***Schedule A/B.***  Real property is reported at book value, net of accumulated depreciation on buildings and improvements.  The Debtors may have listed certain assets as real property when such assets are in fact personal property, or the Debtors may have listed certain assets as personal property when such assets are in fact real property.  The Debtors reserve all of their rights to recategorize or recharacterize such asset holdings to the extent the Debtors determine that such holdings were listed incorrectly.

Under applicable state law, certain oil and gas leases, royalty interests, overriding royalty interests, non-executive mineral interests, non-participating royalty interests, rights of way, and easements are real property interests in law.  The Debtors have included information about the instruments governing such interests on Schedule A, but have not duplicated such leases on Schedule G regardless of whether such instruments may be considered executory contracts or unexpired leased within the meaning of section 365 of the Bankruptcy Code.

Certain of the instruments reflected on Schedule A may contain renewal options, guaranties of payments, options to purchase, rights of first refusal, rights to lease additional lands, and other miscellaneous rights.  Such rights, powers, duties, and obligations are not separately set forth on Schedule A.  The Debtors hereby expressly reserve the right to assert that any instrument listed on Schedule A is an executory contract within the meaning of section 365 of the Bankruptcy Code.  The Debtors reserve all of their rights, claims, and Causes of Action with respect to claims associated with any contracts and agreements listed on Schedule A or Schedule G, including their right to dispute or challenge the characterization or the structure of any transaction, document, or instrument (including any intercompany agreement) related to a creditor's claim.

The Debtors' failure to list any rights in real property on Schedule A/B should not be construed as a waiver of any such rights that may exist, whether known or unknown at this time.

Despite their reasonable efforts to identify all known assets, the Debtors may not have listed all of their Causes of Action or potential Causes of Action against third parties as assets in the Schedules and Statements.  The Debtors reserve all of their rights with respect to any Causes of Action that they may have, and neither these Global Notes nor the Schedules and Statements shall be deemed a waiver of any such claims, Causes of Action, or avoidance actions or in any way prejudice or impair the assertion of such claims.

There are certain parties who may hold potential escheatment claims or claims for funds held in suspense against the Debtors.  Such claims are not disclosed in the Schedules.

36.  ***Schedule A/B 3.***  Amounts listed reflect the bank balance not the net book value.  Bank account balances listed in Part 1 represent the balance as of June 13, 2020.

37.  ***Schedule A/B 8.***  The listed prepaid insurance is as of June 13, 2020.

38.  ***Schedule A/B 11.***  In the ordinary course of the Debtors' businesses, cash settlements must occur after the completion of an accounting settlement cycle, which typically takes 60 days

following the end of a production month for revenue and 90 to 120 days following the end of a production month for joint interest billing.  The timeframe to calculate a net proceed for a given production month requires the following steps:  (a) invoicing of joint interest partners; (b) payment of capital and operating expenses; (c) receipt of gross sales revenues; (d) receipt of gross gathering, processing, and transportation expense invoices; (e) receipt of joint interest billing payments; and (f) disbursement of payments to mineral and other interest owners.  Accordingly, there is a significant amount of accounts receivable owed to the Debtors as of the Petition Date which will be recouped or reimbursed in the ordinary course of business.

39.     ***Schedule A/B 72.***  The Debtors file federal taxes on a consolidated basis.  Net operating losses ("NOLs") and general business credit carryforwards are available to offset taxable income or reduce the tax liability of the consolidated group, of which Extraction Oil & Gas, Inc. is the parent.  Amounts listed for federal NOLs and general business credit carryforwards are based on the Debtors' reasonable estimates.  Open returns remain subject to review and audit.

40.     ***Schedule A/B 77.***  Certain of the Debtors list an aggregate value of oil and natural gas properties held by the applicable Debtor.  Oil and gas properties are comprised of both proved and unproved properties.  Due to the voluminous nature of the numerous assets associated with these properties, including, but not limited to, leases, materials, and equipment, the Debtors have not provided an enumerated list of the individual assets, other than leases, which are set forth in Schedule A/B 55.

41.     ***Schedule D.***  Except as otherwise agreed pursuant to a stipulation, or agreed order, or general order entered by the Bankruptcy Court that is or becomes final, the Debtors and their estates reserve their rights to dispute or challenge the validity, perfection, or immunity from avoidance of any lien purported to be granted or perfected in any specific asset to a creditor listed on Schedule D of any Debtor. Moreover, although the Debtors may have scheduled claims of various creditors as secured claims, the Debtors reserve all rights to dispute or challenge the secured nature of any such creditor's claim or the characterization of the structure of any such transaction or any document or instrument related to such creditor's claim. Further, while the Debtors have included the results of Uniform Commercial Code searches, the listing of such results is not nor shall it be deemed an admission as to the validity of any such lien.  Conversely, the Debtors made reasonable, good faith efforts to include all liens on Schedule D, but may have inadvertently omitted an existing lien because of, among other things, the possibility that a lien may have been imposed after the Uniform Commercial Code searches were performed or a vendor may not have filed the requisite perfection documentation.  Moreover, the Debtors have not included on Schedule D parties that may believe their claims are secured through setoff rights or inchoate statutory lien rights.

The amounts reflected outstanding under the Debtors' prepetition funded indebtedness reflect approximate principal and accrued interest as of the Petition Date.  Although there are multiple parties that hold a portion of the debt included in the Debtors' prepetition secured credit facility and other funded secured indebtedness, only the administrative agents or indenture trustees have been listed for purposes of Schedule D.

Schedule D does not include parties who have filed notices of perfection of liens pursuant to section 546(b) of the Bankruptcy Code.

In certain instances, a Debtor may be a co-obligor, co-mortgagor, or guarantor with respect to scheduled claims of another Debtor, and no claim set forth on Schedule D of any Debtor is intended to acknowledge claims of creditors that are otherwise satisfied or discharged by other entities. The descriptions provided in Schedule D are intended only as a summary. Reference to the applicable loan agreements and related documents is necessary for a complete description of the collateral and the nature, extent, and priority of any liens. Nothing in the Global Notes or the Schedules and Statements shall be deemed a modification or interpretation of the terms of such agreements.

42.   ***Schedule E/F, Part 1:  Creditors Holding Priority Unsecured Claims***.  The listing of any claim on Schedule E/F does not constitute an admission by the Debtors that such claim is entitled to priority treatment under section 507 of the Bankruptcy Code.  The Debtors reserve all of their rights to dispute the amount and the priority status of any claim on any basis at any time.  All claims listed on Part 1 of the Debtors' Schedule E/F are claims arising from tax, wage, or wage-related obligations to which the Debtors may potentially be liable.  Certain of such claims, however, may be subject to ongoing audits and the Debtors are otherwise unable to determine with certainty the amount of many, if not all, of the remaining claims listed on Part 1 of Schedule E/F.  Accordingly, the Debtors have listed all such claims as unknown in amount, pending final resolution of ongoing audits or other outstanding issues.  Additionally, as more fully set forth in the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs and (II) Granting Related Relief* [Docket No. 6], claims against the Debtors on account of wage or wage-related obligations to independent contractors may maintain priority treatment under section 507 of the Bankruptcy Code, but are subject to the priority cap imposed under subsections (a)(4) and (a)(5) of section 507 of the Bankruptcy Code.  Further, to the extent such claims have been paid or may be paid pursuant to a court order, they may not be included on Schedule E/F.

43.   ***Schedule E/F, Part 2:  Creditors Holding Non-Priority Unsecured Claims.***

Schedule E/F does not include certain reserves for potential unliquidated contingencies that historically were carried on the Debtors' books as of the Petition Date; such reserves were for potential liabilities only and do not represent actual liabilities as of the Petition Date.

The Debtors have used their reasonable best efforts to list all general unsecured claims against the Debtors on Part 2 of Schedule E/F based upon the Debtors' existing books and records.  The Debtors have attempted to relate all liabilities to each particular Debtor.

Certain creditors listed on Part 2 of Schedule E/F may owe amounts to the Debtors and, as such, the Debtors may have valid setoff or recoupment rights with respect to such amounts. The amounts listed on Schedule E/F do not reflect any such right of setoff or recoupment and the Debtors reserve all rights to assert any such setoff or recoupment rights. Additionally, certain creditors may assert mechanics', materialman's', or other similar

liens against the Debtors for amounts listed on Schedule E/F.  The Debtors reserve their right to dispute or challenge the validity, perfection, or immunity from avoidance of any lien purported to be perfected by a creditor listed on Schedule E/F of any Debtor.

The claims listed in Schedule E/F arose or were incurred on various dates.  In certain instances, the date on which a claim arose is an open issue of fact.  Determining the date upon which each claim in Schedule E/F was incurred or arose would be unduly burdensome and cost prohibitive and, therefore, the Debtors do not list a date for each claim listed on Schedule E/F.

Schedule E/F contains information regarding pending litigation involving the Debtors.  In certain instances, the Debtor or related co-defendants that are the subject of the litigation may be unclear or undetermined.  To the extent that litigation involving a particular Debtor or related co-defendant has been identified, such information is contained in the Schedule for that Debtor.  Additionally, to the extent the identification of contingent co-defendants is unknown or unclear, the Debtors have listed only the underlying litigation.  The amounts for these potential claims are listed as unknown and marked as contingent, unliquidated, and disputed in the Schedules.

Schedule E/F reflects the prepetition amounts owing to counterparties to executory contracts and unexpired leases.  Such prepetition amounts, however, may be paid in whole or in part in connection with the assumption, or assumption and assignment, of an executory contract or unexpired lease.  In addition, Schedule E/F does not include rejection damage claims of the counterparties to the executory contracts or unexpired leases that have been or may be rejected, to the extent such damage claims exist.

The Debtors have made reasonable efforts to locate and identify Guaranties in each of the executory contracts, unexpired leases, secured financings, debt instruments and other such agreements to which any Debtor is a party.  Where Guaranties have been identified, they have been included in the relevant Schedules for the Debtor or Debtors affected by such Guaranties as a contingent and unliquidated obligation.  The Debtors have placed the Guaranties on Schedule H for both the primary obligor and the guarantor of the relevant obligation.  Guaranties were additionally placed on Schedule D or F for each guarantor, except to the extent they are associated with obligations under an executory contract or unexpired lease identified on Schedule G.  It is possible that certain Guaranties embedded in the Debtors' executory contracts, unexpired leases, secured financings, debt instruments and other such agreements may have been inadvertently omitted.  The Debtors reserve their rights to amend the Schedules to the extent additional Guaranties are identified or such Guaranties are discovered to have expired or be unenforceable.  In addition, the Debtors reserve the right to amend the Schedules and Statements and to re-characterize or reclassify any such contract or claim, whether by amending the Schedules and Statements or in another appropriate filing.  Additionally, failure to list any Guaranties in the Schedules and Statements, including in any future amendments to the Schedules and Statements, shall not affect the enforceability of any Guaranties not listed.

In addition, certain claims listed on Schedule E/F may be entitled to priority under section 503(b)(9) of the Bankruptcy Code.

Additionally, as discussed in the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing Payment of (A) Mineral Payments, (B) Working Interest Disbursements, and (C) Joint Interest Billings and (II) Granting Related Relief* [Docket No. 12] (the "Mineral Interests Motion"), the Debtors maintain certain "suspended funds." The suspended funds represent amounts on account of the Royalties (as defined in the Mineral Interests Motion) that are due but are otherwise unpayable for a variety of reasons, including incorrect contact information, unmarketable title, and ongoing disputes over ownership of the underlying interest. Subject to applicable laws, when and to the extent the Debtors are provided evidence or sufficient notice that the issue preventing payment of the suspended funds to the correct party is resolved, the Debtors release the applicable suspended funds in question. Accordingly, Schedule E/F does not list parties with potential interests in the suspended funds other than parties to litigation with respect to such suspended funds.

The Debtors are obligated under various agreements to market the oil and gas production of certain owners of working interests to potential purchasers and remit the amounts due to the appropriate parties. Specifically, following the sale of production and the receipt of proceeds attributable thereto, the Debtors are obligated to remit the net amount of those proceeds belonging to the owner of the working interest, net of all applicable mineral interests, gathering costs, processing and transportation expenses, and production taxes, as applicable. Certain agreements require the Debtors to process and forward to the appropriate parties, from funds otherwise belonging to third parties, the amounts due on account of such interests and expenses. The foregoing amounts were authorized to be paid under applicable First Day Orders, may not be property of the Debtors' estates, and are not included in Schedule E/F.

44.     ***Schedule G.*** While the Debtors' existing books, records, and financial systems have been relied upon to identify and schedule executory contracts and unexpired leases for each of the Debtors, and although reasonable efforts have been made to ensure the accuracy of Schedule G, inadvertent errors, omissions, or inclusions may have occurred. The Debtors do not make, and specifically disclaim, any representation or warranty as to the completeness or accuracy of the information set forth on Schedule G. The Debtors hereby reserve all of their rights to dispute the validity, status, or enforceability of any contract, agreement, or lease set forth in Schedule G and to amend or supplement Schedule G as necessary. The contracts, agreements, and leases listed on Schedule G may have expired or may have been modified, amended, or supplemented from time to time by various amendments, restatements, waivers, estoppel certificates, letters, memoranda, and other documents, instruments, and agreements that may not be listed therein despite the Debtors' use of reasonable efforts to identify such documents. Further, unless otherwise specified on Schedule G, each executory contract or unexpired lease listed thereon shall include all exhibits, schedules, riders, modifications, declarations, amendments, supplements, attachments, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease, without respect to whether such agreement, instrument, or other document is listed thereon.

In some cases, the same supplier or provider appears multiple times in Schedule G. This multiple listing is intended to reflect distinct agreements between the applicable Debtor and such supplier or provider.

In the ordinary course of business, the Debtors may have issued numerous service orders or work orders pursuant to a master consulting agreement or master service agreement, which service orders or work orders are not listed individually on Schedule G. Each master consulting agreement or master service agreement listed on Schedule G shall include all service orders or work orders entered into pursuant to such master agreement unless otherwise noted.

As a general matter, certain of the Debtors' executory contracts and unexpired leases could be included in more than one category. In those instances, one category has been chosen to avoid duplication. Further, the designation of a category is not meant to be wholly inclusive or descriptive of the entirety of the rights or obligations represented by such contract.

Certain of the executory contracts and unexpired leases listed on Schedule G may contain certain renewal options, guaranties of payment, options to purchase, rights of first refusal, right to lease additional space, and other miscellaneous rights. Such rights, powers, duties, and obligations are not set forth separately on Schedule G. In addition, the Debtors may have entered into various other types of agreements in the ordinary course of their business, such as easements, rights of way, subordination, nondisturbance, and atonement agreements, supplemental agreements, amendments/letter agreements, title agreements, and division order agreements. Such documents also are not set forth in Schedule G.

The Debtors hereby reserve all of their rights, claims, and Causes of Action with respect to the contracts and agreements listed on Schedule G, including the right to dispute or challenge the characterization or the structure of any transaction, document, or instrument related to a creditor's claim, to dispute the validity, status, or enforceability of any contract, agreement, or lease set forth in Schedule G, and to amend or supplement Schedule G as necessary. The inclusion of a contract or lease on Schedule G does not constitute an admission as to the executory or unexpired nature (or non-executory or expired nature) of the contract or lease, or an admission as to the existence or validity of any claims held by the counterparty to such contract or lease, and the Debtors reserve all rights in that regard, including, without limitation, that any agreement is not executory, has expired pursuant to its terms, or was terminated prepetition.

Certain of the executory contracts and unexpired leases listed in Schedule G may have been assigned to, assumed by, or otherwise transferred to certain of the Debtors in connection with, among other things, acquisitions by the Debtors. The Debtors have attempted to list the appropriate Debtor parties to each contract, agreement, and lease on Schedule G; however, there may be instances in which other Debtor entities that are not parties to the contracts, agreements, and leases have been the primary entities conducting business in connection with these contracts, agreements, and leases. Accordingly, the Debtors have listed certain contracts, agreements, and leases on Schedule G of the Debtor entity corresponding to the applicable contracting entity which may, upon further review, differ

from the primary entity conducting business with the counterparty to that particular contract, agreement, or lease.  In instances where the Debtors were unable to determine which Debtor is the party to a contract, agreement, or lease, the Debtors have listed such contracts, agreements, or leases on Schedule G for Debtor Extraction Oil & Gas, Inc.

In the ordinary course of business, the Debtors may have entered into confidentiality agreements which, to the extent that such confidentiality agreements constitute executory contracts, are not listed individually on Schedule G.

In addition, Schedule G does not include rejection damage claims of the counterparties to the executory contracts and unexpired leases that have been or may be rejected, to the extent such damage claims exist.

45.     ***Schedule H.***  The Debtors have not listed any litigation-related co-Debtors on Schedule H. Instead, such listings can be found on the Debtors' Schedules E/F.  In addition, the Debtors have not listed intercompany guarantees between the Debtors.

## Specific Disclosures with Respect to the Debtors' Statements

1.      ***Statement 3.***   Payments to the Debtors' bankruptcy professionals and insiders, and payments on account of intercompany transactions, wage garnishments, and donations are not included in the payments to creditors.  Payments to the aforementioned parties are included in the following locations within the Statements: bankruptcy professionals (Statement 11), insiders (Statement 4), donations (Statement 9 or Statement 13), and intercompany transactions (Statement 4).  The listing of any individual or entity as an insider does not constitute an admission or determination that any such individual is or is not an insider.

2.      ***Statement 4.***  The value of restricted stock listed on Statement 4 reflects realized income on date of vest.

Statement 4 accounts for a respective Debtor's intercompany transactions, as well as other transfers to insiders, as applicable.  As described in the Cash Management Motion, in the ordinary course of business, certain of the Debtor and non-Debtor entities and business divisions maintain business relationships with each other, resulting in intercompany receivables and payables (the "Intercompany Claims").  Instead of listing each of these numerous transactions and entries in their Statements and Schedules for each month, the Debtors have included monthly balances and net activity for the one year prior to the Petition Date.  In addition, the Debtors have separately listed any cash payments between Debtors and between Debtors and non-Debtor affiliates.  These cash transactions are also recorded in the net monthly activity listing in the Debtors' books and records.

3.      ***Statement 6.***  For a discussion of setoff, recoupment and nettings incurred by the Debtors, refer to paragraph 23 of these Global Notes.

4.      ***Statement 7.***  The Debtors have not included workers' compensation claims in response to this question because the Debtors maintain that this disclosure would be in violation of

certain laws, including the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").

5. **Statement 13.** Any values listed in the description of the property transferred are estimates and included for illustrative purposes only, as many transactions include adjustments to the purchase price post-closing. Futher, certain transactions relating to property sales were made by more than one Debtor. The Debtors have elected to reflect an estimated aggregate transaction value across all of the associated Debtor entities.

6. **Statement 21.** In connection with their oil and gas assets, the Debtors are obligated, pursuant to their oil and gas leases and other agreements, to remit to the lessors of the oil and gas leases and potentially other parties their share of revenue from the producing wells located on the respective real property, pursuant to the terms of their oil and gas lease. In addition, overriding royalties must be remitted to the owners of those interests, and the holders of non-executive mineral interests, as well as the holders of nonparticipating royalty interests, must receive the proceeds due to them pursuant to the applicable agreement. The foregoing amounts were authorized to be paid under applicable First Day Orders, may not be property of the Debtors' estates, and are not included in Statement 21.

The Debtors are obligated under various agreements to market the oil and gas production of certain owners of working interests to potential purchasers and remit the amounts due to the appropriate parties. Specifically, following the sale of production and the receipt of proceeds attributable thereto, the Debtors are obligated to remit the net amount of those proceeds belonging to the owner of the working interest, net of all applicable mineral interests, gathering costs, processing and transportation expenses, and production taxes, as applicable. Certain agreements require the Debtors to process and forward to the appropriate parties, from funds otherwise belonging to third parties, the amounts due on account of such interests and expenses. The foregoing amounts were authorized to be paid under applicable First Day Orders, may not be property of the Debtors' estates, and are not included in Statement 21.

The Debtors jointly own certain surplus inventory that was originally obtained on behalf of the applicable joint interest owner for the drilling, maintenance or operation of an oil and gas property. If these materials are ultimately not needed at the subject property they may be stored as surplus inventory either at an oil and gas property site or a storage yard.

The Debtors do not hold or control property that is owned by other entities outside of commercial arrangements such as leasing or renting property for the Debtors' use. The Debtors' do not control property partially owned by joint interest partners as the operator of oil and gas properties. Such equipment is in use supporting oil and gas production on jointly owned locations operated by the Debtors.

7. **Statements 22-24.** The Debtors historically have operated over a substantial period of time and periodically have: (a) been party to judicial and administrative proceedings under environmental laws; (b) received notification from governmental units of potential liability under, or violations of, environmental laws; and (c) notified governmental units of releases of hazardous materials. The Debtors may no longer have active operations in a particular

jurisdiction and may no longer have relevant records, or the records may no longer be complete or reasonably accessible or reviewable. In some cases, statutory document retention periods have passed. Further, some individuals who once possessed responsive information are no longer employed by the Debtors. For all these reasons, it may not be reasonably possible to identify and supply all of the requested information that is responsive to Statements 22-24. The Debtors have made commercially reasonable efforts to provide responsive information for matters and issues that have arisen and/or that the Debtors consider to have been resolved. The Debtors acknowledge the possibility that information related to proceedings, governmental notices, and reported releases of hazardous materials responsive to Statements 22-24 may be discovered subsequent to the filing of the Schedules and Statements. The Debtors reserve the right to supplement or amend this response in the future if additional information becomes available.

This response covers proceedings, governmental notices, and reported releases of hazardous materials related to the primary applicable environmental laws and does not include proceedings, governmental notices, or reported releases related to non-environmental laws, such as occupational safety and health laws or general transportation laws. This response is also limited to identifying circumstances in which governmental agencies have alleged in writing that particular operations of the Debtors are in violation of environmental laws and proceedings that have resulted from alleged violations of environmental laws. This response does not cover: (a) periodic information requests, investigations, or inspections from governmental units concerning compliance with environmental laws; or (b) routine reports and submissions concerning permitted discharges resulting from routine operations where such reports and submissions were made in compliance with regulatory requirements, such as monthly discharge monitoring reports, quarterly and annual air emissions reports, quarterly and annual groundwater monitoring reports, deviation/exceedance reports, and annual toxic release inventory reports. In addition, Statement 7 may identify information that is also responsive to Statement 22. This response assumes that any responsive information provided in response to Statements, Part 12, Question 22, is also deemed to have been provided in response to Statements, Part 12, Questions 23-24, as appropriate.

8. **Statement 26D.** Pursuant to the requirements of the Securities Exchange Act of 1934, as amended, Extraction Oil & Gas, Inc. has filed with the U.S. Securities and Exchange Commission (the "SEC") reports on Form 8-K, Form 10-Q, and Form 10-K. These SEC filings contain consolidated financial information relating to the Debtors. Additionally, consolidated financial information for the Debtors is posted on the company's website at http://www.irextractionog.com/financial-information/sec-filings. Because the SEC filings and the website are of public record, the Debtors do not maintain records of the parties that requested or obtained copies of any of the SEC filings from the SEC or the Debtors. In addition, in the ordinary course of business, the Debtors provide financial statements that may not be part of a public filing to certain parties, such as financial institutions, investment banks, debtholders, auditors, potential investors, vendors, and financial advisors. The Debtors do not maintain complete lists to track such disclosures. As such, the Debtors have not provided lists of these parties in response to Statement 26D.

\* \* \*

18

**Fill in this information to identify the case:**

Debtor name  XTR Midstream, LLC

United States Bankruptcy Court for the: _____  District of Delaware

Case number (If known):  20-11557 _____

☐ Check if this is an
amended filing

Official Form 206Sum

## Summary of Assets and Liabilities for Non-Individuals                    12/15

---

### Part 1:  Summary of Assets

1. **Schedule A/B: Assets–Real and Personal Property** (Official Form 206A/B)

    1a. **Real property:**
    Copy line 88 from *Schedule A/B* ...................................................................................

    $ _____3,059,800.45_

    1b. **Total personal property:**
    Copy line 91A from *Schedule A/B* ...............................................................................

    $ _____6,913,393.92_
    + undetermined amounts

    1c. **Total of all property:**
    Copy line 92 from *Schedule A/B* ...................................................................................

    $ _____9,973,194.37_
    + undetermined amounts

---

### Part 2:  Summary of Liabilities

2. **Schedule D: Creditors Who Have Claims Secured by Property** (Official Form 206D)
    Copy the total dollar amount listed in Column A, *Amount of claim*, from line 3 of *Schedule D* ............

    $ ___604,199,296.05_
    + undetermined amounts

3. **Schedule E/F: Creditors Who Have Unsecured Claims** (Official Form 206E/F)

    3a. **Total claim amounts of priority unsecured claims:**
    Copy the total claims from Part 1 from line 5a of *Schedule E/F* .........................................

    $ _____0.00_
    + undetermined amounts

    3b. **Total amount of claims of nonpriority amount of unsecured claims:**
    Copy the total of the amount of claims from Part 2 from line 5b of *Schedule E/F* .....................

    + $ _1,161,963,253.19_
    + undetermined amounts

4. **Total liabilities** .............................................................................................................
    Lines 2 + 3a + 3b

    $ _1,766,162,549.24_
    + undetermined amounts

---

---

**Fill in this information to identify the case:**

Debtor name  XTR Midstream, LLC

United States Bankruptcy Court for the:_____ District of Delaware

Case number (If known):    20-11557_____

☐ Check if this is an
amended filing

---

Official Form 206A/B

# Schedule A/B: Assets — Real and Personal Property

**12/15**

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

## Part 1:    Cash and cash equivalents

1. **Does the debtor have any cash or cash equivalents?**

   ☐ No. Go to Part 2.
   ☒ Yes. Fill in the information below.

| All cash or cash equivalents owned or controlled by the debtor | Current value of debtor's interest |
|---|---|

2. **Cash on hand** — $_____ 0.00

3. **Checking, savings, money market, or financial brokerage accounts** *(Identify all)*

| Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account number | |
|---|---|---|---|
| 3.1. See Attached Rider | | ___ ___ ___ ___ | $_____ 3,176.91 |
| 3.2. | | ___ ___ ___ ___ | $_____ |

4. **Other cash equivalents** *(Identify all)*

| 4.1. None | $_____ 0.00 |
|---|---|
| 4.2. | $_____ |

5. **Total of Part 1** — $_____ 3,176.91

   Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.

## Part 2:    Deposits and prepayments

6. **Does the debtor have any deposits or prepayments?**

   ☒ No. Go to Part 3.
   ☐ Yes. Fill in the information below.

   Current value of debtor's interest

7. **Deposits, including security deposits and utility deposits**

   Description, including name of holder of deposit

| 7.1. _____ | $_____ |
|---|---|
| 7.2. _____ | $_____ |

Debtor  XTR Midstream, LLC
        Name                                    Case number (if known) 20-11557

8. **Prepayments, including prepayments on executory contracts, leases, insurance, taxes, and rent**

Description, including name of holder of prepayment

8.1. _____  $_____

8.2. _____  $_____

9. **Total of Part 2.**                                          $_____ 0.00

   Add lines 7 through 8. Copy the total to line 81.

---

## Part 3:  Accounts receivable

10. **Does the debtor have any accounts receivable?**

    [X] No. Go to Part 4.

    [ ] Yes. Fill in the information below.

                                                          Current value of debtor's interest

11. **Accounts receivable**

    11a. 90 days old or less:  _____ – _____ = ....➔   $_____
                               face amount        doubtful or uncollectible accounts

    11b. Over 90 days old:     _____ – _____ = ....➔   $_____
                               face amount        doubtful or uncollectible accounts

12. **Total of Part 3**                                          $_____ 0.00

    Current value on lines 11a + 11b = line 12. Copy the total to line 82.

---

## Part 4:  Investments

13. **Does the debtor own any investments?**

    [ ] No. Go to Part 5.

    [X] Yes. Fill in the information below.

                                          Valuation method          Current value of debtor's
                                          used for current value     interest

14. **Mutual funds or publicly traded stocks not included in Part 1**

    Name of fund or stock:

    14.1. None _____  _____    $_____ 0.00

    14.2. _____  _____    $_____

15. **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including any interest in an LLC, partnership, or joint venture**

    Name of entity:                        % of ownership:

    15.1. See Attached Rider _____  _____ %    _____    $_____ 0.00

    15.2. _____  _____ %    _____    $_____
                                                                             + undetermined amounts

16. **Government bonds, corporate bonds, and other negotiable and non-negotiable instruments not included in Part 1**

    Describe:

    16.1. None _____  _____    $_____ 0.00

    16.2. _____  _____    $_____

17. **Total of Part 4**                                          $_____ 0.00

    Add lines 14 through 16. Copy the total to line 83.              + undetermined amounts

---

Debtor    XTR Midstream, LLC _____    Case number (*if known*)_ 20-11557 _____
            Name

## Part 5:    Inventory, excluding agriculture assets

18. **Does the debtor own any inventory (excluding agriculture assets)?**

☒ No. Go to Part 6.

☐ Yes. Fill in the information below.

| General description | Date of the last physical inventory | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 19. **Raw materials** | | | | |
| _____ | MM / DD / YYYY | $_____ | _____ | $_____ |
| 20. **Work in progress** | | | | |
| _____ | MM / DD / YYYY | $_____ | _____ | $_____ |
| 21. **Finished goods, including goods held for resale** | | | | |
| _____ | MM / DD / YYYY | $_____ | _____ | $_____ |
| 22. **Other inventory or supplies** | | | | |
| _____ | MM / DD / YYYY | $_____ | _____ | $_____ |

23. **Total of Part 5**

Add lines 19 through 22. Copy the total to line 84.

$_____ 0.00

24. **Is any of the property listed in Part 5 perishable?**

☐ No

☐ Yes

25. **Has any of the property listed in Part 5 been purchased within 20 days before the bankruptcy was filed?**

☐ No

☐ Yes. Book value _____    Valuation method_____    Current value_____

26. **Has any of the property listed in Part 5 been appraised by a professional within the last year?**

☐ No

☐ Yes

## Part 6:    Farming and fishing-related assets (other than titled motor vehicles and land)

27. **Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

☒ No. Go to Part 7.

☐ Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 28. **Crops—either planted or harvested** | | | |
| _____ | $_____ | _____ | $_____ |
| 29. **Farm animals** *Examples*: Livestock, poultry, farm-raised fish | | | |
| _____ | $_____ | _____ | $_____ |
| 30. **Farm machinery and equipment** (Other than titled motor vehicles) | | | |
| _____ | $_____ | _____ | $_____ |
| 31. **Farm and fishing supplies, chemicals, and feed** | | | |
| _____ | $_____ | _____ | $_____ |
| 32. **Other farming and fishing-related property not already listed in Part 6** | | | |
| | $_____ | | $_____ |

Debtor    XTR Midstream, LLC_____    Case number (*if known*)__20-11557_____
          Name

33. **Total of Part 6.**

   Add lines 28 through 32. Copy the total to line 85.

   <div style="border:1px solid">$_____0.00</div>

34. **Is the debtor a member of an agricultural cooperative?**

   ☐ No

   ☐ Yes. Is any of the debtor's property stored at the cooperative?

      ☐ No
      ☐ Yes

35. **Has any of the property listed in Part 6 been purchased within 20 days before the bankruptcy was filed?**

   ☐ No

   ☐ Yes. Book value $_____    Valuation method _____    Current value $_____

36. **Is a depreciation schedule available for any of the property listed in Part 6?**

   ☐ No
   ☐ Yes

37. **Has any of the property listed in Part 6 been appraised by a professional within the last year?**

   ☐ No
   ☐ Yes

---

**Part 7:    Office furniture, fixtures, and equipment; and collectibles**

38. **Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

   ☑ No. Go to Part 8.
   ☐ Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 39. **Office furniture** | | | |
| _____ | $_____ | _____ | $_____ |
| 40. **Office fixtures** | | | |
| _____ | $_____ | _____ | $_____ |
| 41. **Office equipment, including all computer equipment and communication systems equipment and software** | | | |
| _____ | $_____ | _____ | $_____ |
| 42. **Collectibles** *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; china and crystal; stamp, coin, or baseball card collections; other collections, memorabilia, or collectibles | | | |
| 42.1_____ | $_____ | _____ | $_____ |
| 42.2_____ | $_____ | _____ | $_____ |
| 42.3_____ | $_____ | _____ | $_____ |

43. **Total of Part 7.**

   Add lines 39 through 42. Copy the total to line 86.

   <div style="border:1px solid">$_____0.00</div>

44. **Is a depreciation schedule available for any of the property listed in Part 7?**

   ☐ No
   ☐ Yes

45. **Has any of the property listed in Part 7 been appraised by a professional within the last year?**

   ☐ No
   ☐ Yes

---

Debtor    XTR Midstream, LLC _____    Case number (if known)____20-11557_____
          Name

## Part 8:    Machinery, equipment, and vehicles

46. **Does the debtor own or lease any machinery, equipment, or vehicles?**

☒ No. Go to Part 9.

☐ Yes. Fill in the information below.

| General description<br><br>Include year, make, model, and identification numbers (i.e., VIN, HIN, or N-number) | Net book value of debtor's interest<br><br>(Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| **47. Automobiles, vans, trucks, motorcycles, trailers, and titled farm vehicles** | | | |
| 47.1_____ | $_____ | _____ | $_____ |
| 47.2_____ | $_____ | _____ | $_____ |
| 47.3_____ | $_____ | _____ | $_____ |
| 47.4_____ | $_____ | _____ | $_____ |
| **48. Watercraft, trailers, motors, and related accessories** Examples: Boats, trailers, motors, floating homes, personal watercraft, and fishing vessels | | | |
| 48.1_____ | $_____ | _____ | $_____ |
| 48.2_____ | $_____ | _____ | $_____ |
| **49. Aircraft and accessories** | | | |
| 49.1_____ | $_____ | _____ | $_____ |
| 49.2_____ | $_____ | _____ | $_____ |
| **50. Other machinery, fixtures, and equipment (excluding farm machinery and equipment)** | | | |
| _____ | $_____ | _____ | $_____ |

51. **Total of Part 8.**

Add lines 47 through 50. Copy the total to line 87.

$_____0.00

52. **Is a depreciation schedule available for any of the property listed in Part 8?**

☐ No

☐ Yes

53. **Has any of the property listed in Part 8 been appraised by a professional within the last year?**

☐ No

☐ Yes

Debtor    XTR Midstream, LLC_____    Case number *(if known)*___20-11557_____
_____Name

---

**Part 9:    Real property**

54. **Does the debtor own or lease any real property?**

☐ No. Go to Part 10.

☒ Yes. Fill in the information below.

55. **Any building, other improved real estate, or land which the debtor owns or in which the debtor has an interest**

| Description and location of property<br>Include street address or other description such as Assessor Parcel Number (APN), and type of property (for example, acreage, factory, warehouse, apartment or office building), if available. | Nature and extent of debtor's interest in property | Net book value of debtor's interest<br>(Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 55.1 See Attached Rider_____ | _____ | $_____3,059,800.45 | Net Book Value_____ | $_____3,059,800.45 |
| 55.2_____ | _____ | $_____ | _____ | $_____ |
| 55.3_____ | _____ | $_____ | _____ | $_____ |
| 55.4_____ | _____ | $_____ | _____ | $_____ |
| 55.5_____ | _____ | $_____ | _____ | $_____ |
| 55.6_____ | _____ | $_____ | _____ | $_____ |

56. **Total of Part 9.**

Add the current value on lines 55.1 through 55.6 and entries from any additional sheets. Copy the total to line 88.

$_____3,059,800.45

57. **Is a depreciation schedule available for any of the property listed in Part 9?**

☐ No

☒ Yes

58. **Has any of the property listed in Part 9 been appraised by a professional within the last year?**

☒ No

☐ Yes

---

**Part 10:    Intangibles and intellectual property**

59. **Does the debtor have any interests in intangibles or intellectual property?**

☒ No. Go to Part 11.

☐ Yes. Fill in the information below.

| General description | Net book value of debtor's interest<br>(Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 60. **Patents, copyrights, trademarks, and trade secrets**<br>_____ | $_____ | _____ | $_____ |
| 61. **Internet domain names and websites**<br>_____ | $_____ | _____ | $_____ |
| 62. **Licenses, franchises, and royalties**<br>_____ | $_____ | _____ | $_____ |
| 63. **Customer lists, mailing lists, or other compilations**<br>_____ | $_____ | _____ | $_____ |
| 64. **Other intangibles, or intellectual property**<br>_____ | $_____ | _____ | $_____ |
| 65. **Goodwill**<br>_____ | $_____ | _____ | $_____ |

66. **Total of Part 10.**

Add lines 60 through 65. Copy the total to line 89.

$_____0.00

Debtor    XTR Midstream, LLC                                    Case number (if known)    20-11557
          Name

67. **Do your lists or records include personally identifiable information of customers** (as defined in 11 U.S.C. §§ 101(41A) and 107)**?**

☐ No
☐ Yes

68. **Is there an amortization or other similar schedule available for any of the property listed in Part 10?**

☐ No
☐ Yes

69. **Has any of the property listed in Part 10 been appraised by a professional within the last year?**

☐ No
☐ Yes

**Part 11:   All other assets**

70. **Does the debtor own any other assets that have not yet been reported on this form?**

Include all interests in executory contracts and unexpired leases not previously reported on this form.

☐ No. Go to Part 12.
☒ Yes. Fill in the information below.

|  | Current value of debtor's interest |
|---|---|

71. **Notes receivable**

Description (include name of obligor)

None _____   _____ – _____ = ➜   $_____ 0.00
                        Total face amount   doubtful or uncollectible amount

72. **Tax refunds and unused net operating losses (NOLs)**

Description (for example, federal, state, local)

None _____   Tax year _____   $_____ 0.00
_____   Tax year _____   $_____
_____   Tax year _____   $_____

73. **Interests in insurance policies or annuities**

See Attached Rider _____   $_____ 0.00
                                         + undetermined amounts

74. **Causes of action against third parties (whether or not a lawsuit has been filed)**

None _____   $_____ 0.00

**Nature of claim** _____

**Amount requested** $_____

75. **Other contingent and unliquidated claims or causes of action of every nature, including counterclaims of the debtor and rights to set off claims**

None _____   $_____ 0.00

**Nature of claim** _____

**Amount requested** $_____

76. **Trusts, equitable or future interests in property**

None _____   $_____ 0.00

77. **Other property of any kind not already listed** *Examples:* Season tickets, country club membership

See Attached Rider _____   $_____ 6,910,217.01
_____   $_____

78. **Total of Part 11.**

Add lines 71 through 77. Copy the total to line 90.   $_____ 6,910,217.01
                                                      + undetermined amounts

79. **Has any of the property listed in Part 11 been appraised by a professional within the last year?**

☒ No
☐ Yes

Debtor   XTR Midstream, LLC
         _____          Case number (*if known*)___20-11557_____
         Name

---

| **Part 12:** | **Summary** |
| --- | --- |

**In Part 12 copy all of the totals from the earlier parts of the form.**

| Type of property | Current value of personal property | Current value of real property |
| --- | --- | --- |
| 80. **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1.* | $ 3,176.91 | |
| 81. **Deposits and prepayments.** *Copy line 9, Part 2.* | $ 0.00 | |
| 82. **Accounts receivable.** *Copy line 12, Part 3.* | $ 0.00 | |
| 83. **Investments.** *Copy line 17, Part 4.* | $ 0.00 <br> + undetermined amounts | |
| 84. **Inventory.** *Copy line 23, Part 5.* | $ 0.00 | |
| 85. **Farming and fishing-related assets.** *Copy line 33, Part 6.* | $ 0.00 | |
| 86. **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | $ 0.00 | |
| 87. **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | $ 0.00 | |
| 88. **Real property.** *Copy line 56, Part 9.* ................................ ➔ | | $ 3,059,800.45 |
| 89. **Intangibles and intellectual property.** *Copy line 66, Part 10.* | $ 0.00 | |
| 90. **All other assets.** *Copy line 78, Part 11.* | + $ 6,910,217.01 <br> + undetermined amounts | |
| 91. **Total.** Add lines 80 through 90 for each column. .....................91a. | $ 6,913,393.92 <br> + undetermined amounts | 91b. $ 3,059,800.45 |
| 92. **Total of all property on Schedule A/B.** Lines 91a + 91b = 92. ......................................................... | | $ 9,973,194.37 <br> + undetermined amounts |

---

Debtor Name: XTR Midstream, LLC                                                      Case Number: 20-11557

**Assets - Real and Personal Property**

**Part 1, Question 3:** Checking, savings, money market, or financial brokerage accounts

| Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account number | Current value of debtor's interest |
|---|---|---|---|
| WELLS FARGO BANK, N.A. | Controlled Disbursement Account | 1523 | $0.00 |
| WELLS FARGO BANK, N.A. | Master Operating Account | 6663 | $3,176.91 |
|  |  | **TOTAL** | **$3,176.91** |

Debtor Name: XTR Midstream, LLC                                     Case Number: 20-11557

**Assets - Real and Personal Property**

**Part 4, Question 15:** Non-publicly traded stock and interests in incorporated and unincorporated businesses, including any interest in an LLC, partnership, or joint venture

| Name of Entity | % of ownership | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| Elevation Midstream, LLC | <0.01 | N/A | Undetermined |
| | | **TOTAL** | **$0.00**<br>**+ undetermined amounts** |

Debtor Name: XTR Midstream, LLC                                                                    Case Number: 20-11557

**Part 9, Question 55: Any building, other improved real estate, or land which the debtor owns are in which the debtor has an interest**

| Lease No. / Contract Code | Lease / Contract Type | Lessor / Counter Party Name | Lease/Contract Date | NET ACS | State | County |
|---|---|---|---|---|---|---|
| 107.001 | Right of Way | 7N, LLC | 2/12/2016 | N/A | CO | Weld |
| 107.003 | Right of Way | HAROLD STROMBERGER | 11/5/2015 | N/A | CO | Weld |
| 107.009 | Right of Way | JOE B STRICKLIN | 11/9/2015 | N/A | CO | Weld |
| 107.010 | Right of Way | HENRY AMEN | 10/9/2015 | N/A | CO | Weld |
| 107.022 | Right of Way | BETHKUJO LLC | 11/10/2015 | N/A | CO | Weld |
| 107.023 | Right of Way | NATALIE J SENA | 11/10/2015 12/8/15 | N/A | CO | Weld |
| 107.024 | Right of Way | NATALIE J SENA (1/2INT) | 12/8/2015 | N/A | CO | Weld |
| 107.025 | Right of Way | HARVESTERS RESOURCES LLC | 11/4/2015 | N/A | CO | Weld |
| 107.026 | Right of Way | SILVIANO MUNOZ | 11/5/2015 | N/A | CO | Weld |
| 107.027 | Right of Way | RICHARD A MONTERA (CALVARY FARMS) | 11/5/2015 | N/A | CO | Weld |
| 107.032 | Right of Way | NORTH WELD COUNTY WATER DISTRICT | 3/15/2016 | N/A | CO | Weld |
| 107.037 | Right of Way | MORO FARMS, INC | 1/6/2016 | N/A | CO | Weld |

Debtor Name: XTR Midstream, LLC                                    Case Number: 20-11557

**Assets - Real and Personal Property**

**Part 11, Question 73:** Interests in insurance policies or annuities

| Description | Policy type | Policy number | Current value of debtor's interest |
|---|---|---|---|
| ACE AMERICAN INS. CO | Excess A-Side Director & Officer; 10/12/19 - 10/12/20 | DOXG25602651004 | Undetermined |
| ALLIED WORLD INSURANCE CO | A-Side Director & Officer; 10/12/19 - 10/12/20 | 0310-3786 | Undetermined |
| AXIS INSURANCE COMPANY | Excess Director & Officer; 10/12/19 - 10/12/20 | MLN797590/01/2019 | Undetermined |
| CONTINENTAL CASUALTY COMPANY | Excess A-Side Director & Officer; 10/12/19 - 10/12/20 | 652041944 | Undetermined |
| ENDURANCE AMERICAN INSURANCE CO | Excess Director & Officer; 10/12/19 - 10/12/20 | DOX10010022403 | Undetermined |
| FEDERAL INSURANCE COMPANY | Excess Liability; 5/20/20 - 5/20/21 | 79884808 | Undetermined |
| GREAM AMERICAN INSURANCE CO | Excess Director & Officer; 10/12/19 - 10/12/20 | DFX2380907 | Undetermined |
| HANOVER INSURANCE COMPANY | Property; 5/20/20 - 5/20/21 | RH4H26511900 | Undetermined |
| LLOYDS OF LONDON | Control of Well/Operator's Extra Expense; 10/31/19 - 4/30/21 | GU307850N | Undetermined |
| MARKEL INTERNATIONAL INSURANCE CO LTD. | Excess Liability; 5/20/20 - 5/20/21 | JUMB102016 | Undetermined |
| MARKEL INTERNATIONAL INSURANCE CO LTD. | General Liability, Employee Benefits Liability, Hired & Non-Owned Auto; 5/20/20 - 5/20/21 | JCGL102357 | Undetermined |
| NATIONAL UNION FIRE INS. CO. OF PITTS. PA | Excess Director & Officer; 10/12/19 - 10/12/20 | 02-144-18-03 | Undetermined |
| OLD REPUBLIC INSURANCE CO | Excess Director & Officer; 10/12/19 - 10/12/20 | ORPRO43375 | Undetermined |
| PINNACOL ASSURANCE | Workers Compensation (CO); 06/01/20 - 06/01/21 | 4174932 | Undetermined |
| STARR INDEMNITY & LIABILITY CO | Excess Director & Officer; 10/12/19 - 10/12/20 | 1000057055191 | Undetermined |
| TRAVELERS CASUALTY AND SURETY CO OF AM | Executive Risk Package; 01/25/20 - 01/25/21 | 106437240 | Undetermined |
| TWIN CITY FIRE INSURANCE CO | Excess Director & Officer; 10/12/19 - 10/12/20 | 34DA029844319 | Undetermined |
| XL SPECIALTY INSURANCE COMPANY | Director & Officer; 10/12/19 - 10/12/20 | ELU16424719 | Undetermined |
| ZURICH AMERICAN INSURANCE CO. | Workers Compensation (AOS); 06/01/20 - 06/01/21 | WC918496806 | Undetermined |
| | | **TOTAL** | **$0.00**<br>**+ undetermined amounts** |

Debtor Name:        XTR Midstream, LLC                                    Case Number:        20-11557

**Assets - Real and Personal Property**

**Part 11, Question 77:** Other property of any kind not already listed

| Description | Current value of debtor's interest |
|---|---:|
| Intercompany Receivable from 7N, LLC | $6,814,217.01 |
| Intercompany Receivable from 8 North, LLC | $96,000.00 |
| **TOTAL** | **$6,910,217.01** |

<table>
<tr><td colspan="2"><strong>Fill in this information to identify the case:</strong></td></tr>
<tr><td>Debtor name</td><td>XTR Midstream, LLC</td></tr>
<tr><td>United States Bankruptcy Court for the:</td><td>District of Delaware</td></tr>
<tr><td>Case number (If known):</td><td>20-11557</td></tr>
</table>

☐ Check if this is an amended filing

**Official Form 206D**

# Schedule D: Creditors Who Have Claims Secured by Property     12/15

Be as complete and accurate as possible.

1. **Do any creditors have claims secured by debtor's property?**
   ☐ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.
   ☒ Yes. Fill in all of the information below.

## Part 1:    List Creditors Who Have Secured Claims

2. **List in alphabetical order all creditors who have secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim.

| | | Column A<br>**Amount of claim**<br>Do not deduct the value of collateral. | Column B<br>**Value of collateral that supports this claim** |
|---|---|---|---|
| **2.1** **Creditor's name**<br>WELLS FARGO BANK, NATIONAL ASSOCIATION, AS ADMINISTRATIVE AGENT | **Describe debtor's property that is subject to a lien**<br>As Provided In UCC Financing Statement | $ Undetermined | $ Undetermined |
| **Creditor's mailing address**<br>1700 LINCOLN ST.<br>THIRD FLOOR<br>DENVER, CO 80203 | **Describe the lien**<br>Secured Claim Relating To UCC Financing Statement | | |
| **Creditor's email address, if known** | **Is the creditor an insider or related party?**<br>☒ No<br>☐ Yes | | |
| **Date debt was incurred**  Undetermined<br>**Last 4 digits of account number** | **Is anyone else liable on this claim?**<br>☒ No<br>☐ Yes. Fill out Schedule H: Codebtors (Official Form 206H). | | |
| **Do multiple creditors have an interest in the same property?**<br>☒ No<br>☐ Yes. Specify each creditor, including this creditor, and its relative priority. | **As of the petition filing date, the claim is:**<br>Check all that apply.<br>☒ Contingent<br>☒ Unliquidated<br>☐ Disputed | | |
| **2.2** **Creditor's name**<br>WELLS FARGO BANK, NATIONAL ASSOCIATION | **Describe debtor's property that is subject to a lien**<br>As Provided in the Credit Agreement | $ 604,199,296.05 | $ Undetermined |
| **Creditor's mailing address**<br>ATTN: JOE ROTTINGHAUS<br>1700 LINCOLN ST<br>6TH FLOOR<br>DENVER, CO 80203 | **Describe the lien**<br>Guarantor to the Reserve-Based Lending Facility and associated Commitment, Letters of Credit, and Fronting Fees | | |
| **Creditor's email address, if known** | **Is the creditor an insider or related party?**<br>☒ No<br>☐ Yes | | |
| **Date debt was incurred**  Undetermined<br>**Last 4 digits of account number** | **Is anyone else liable on this claim?**<br>☐ No<br>☒ Yes. Fill out Schedule H: Codebtors (Official Form 206H). | | |
| **Do multiple creditors have an interest in the same property?**<br>☒ No<br>☐ Yes. Have you already specified the relative priority?<br>  ☐ No. Specify each creditor, and its relative priority.<br><br>  ☐ Yes. The relative priority of creditors is specified on lines | **As of the petition filing date, the claim is:**<br>Check all that apply.<br>☐ Contingent<br>☒ Unliquidated<br>☐ Disputed | | |

3. **Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional Page, if any.**     $ 604,199,296.05
   + undetermined amounts

Debtor   XTR Midstream, LLC
_____
         Name

Case number (if known)  20-11557
_____

| Part 1: | Additional Page | Column A **Amount of claim** Do not deduct the value of collateral | Column B **Value of collateral that supports this claim** |
|---|---|---|---|

**Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page.**

2.3

**Creditor's name**
WESTCHESTER FIRE INSURANCE COMPANY

**Creditor's mailing address**
C/O THE HUSTEAD LAW FIRM, 4643 S. ULSTER ST.
STE. 1250
DENVER, CO 80237

**Creditor's email address, if known**

**Date debt was incurred**   Undetermined
**Last 4 digits of account number**

**Do multiple creditors have an interest in the same property?**

☒ No

☐ Yes. Have you already specified the relative priority?

   ☒ No. Specify each creditor, including this creditor, and its relative priority.

   ☐ Yes. The relative priority of creditors is specified on lines

**Describe debtor's property that is subject to a lien**
As Provided In UCC Financing Statement

**Describe the lien**
Secured Claim Relating To UCC Financing Statement

**Is the creditor an insider or related party?**

☒ No
☐ Yes

**Is anyone else liable on this claim?**

☒ No
☐ Yes. Fill out Schedule H: Codebtors (Official Form 206H)

**As of the petition date, the claim is:**
Check all that apply.

☒ Contingent
☒ Unliquidated
☐ Disputed

$ Undetermined

$ Undetermined

Debtor    XTR Midstream, LLC
_____
          Name

Case number *(if known)* __20-11557__

---

## Part 2:    List Others to Be Notified for a Debt Already Listed in Part 1

List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for secured creditors.

If no other need to be notified for the debts listed in Part 1, do not fill out or submit this page. If additional pages are needed, copy this page.

| Name and address | On which line in Part 1 did you enter the related creditor? | Last 4 digits of account number for this entity |
|---|---|---|

**Fill in this information to identify the case:**

Debtor    XTR Midstream, LLC

United States Bankruptcy Court for the: _____ District of Delaware

Case number    20-11557
(If known)

☐ Check if this is an
amended filing

## Official Form 206E/F

# Schedule E/F: Creditors Who Have Unsecured Claims                          12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY unsecured claims and Part 2 for creditors with NONPRIORITY unsecured claims. List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on *Schedule A/B: Assets - Real and Personal Property* (Official Form 206A/B) and on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G). Number the entries in Parts 1 and 2 in the boxes on the left. If more space is needed for Part 1 or Part 2, fill out and attach the Additional Page of that Part included in this form.

| **Part 1:** | **List All Creditors with PRIORITY Unsecured Claims** |
|---|---|

1. **Do any creditors have priority unsecured claims?** (See 11 U.S.C. § 507).
   ☐ No. Go to Part 2.
   ☒ Yes. Go to line 2.

2. **List in alphabetical order all creditors who have unsecured claims that are entitled to priority in whole or in part.** If the debtor has more than 3 creditors with priority unsecured claims, fill out and attach the Additional Page of Part 1.

| | | | Total claim | Priority amount |
|---|---|---|---|---|

**2.1** | **Priority creditor's name and mailing address**
COLORADO SECRETARY OF STATE
1700 BROADWAY #200
DENVER, CO 80202

**As of the petition filing date, the claim is:** $ ____ Undetermined    $ ____ Undetermined
*Check all that apply.*
☒ Contingent
☒ Unliquidated
☐ Disputed

**Date or dates debt was incurred**
Undetermined

**Basis for the claim:**
Environmental and Business Fees and Taxes

**Last 4 digits of account number** ___ ___ ___ ___

**Is the claim subject to offset?**
☒ No
☐ Yes

**Specify Code subsection of PRIORITY unsecured claim:** 11 U.S.C. § 507(a) (____)

---

**2.2** | **Priority creditor's name and mailing address**
CT CORPORATION SYSTEM
PO BOX 4349
CAROL STREAM, IL 60197

**As of the petition filing date, the claim is:** $ ____ Undetermined    $ ____ Undetermined
*Check all that apply.*
☒ Contingent
☒ Unliquidated
☐ Disputed

**Date or dates debt was incurred**
Undetermined

**Basis for the claim:**
Environmental and Business Fees and Taxes

**Last 4 digits of account number** ___ ___ ___ ___

**Is the claim subject to offset?**
☒ No
☐ Yes

**Specify Code subsection of PRIORITY unsecured claim:** 11 U.S.C. § 507(a) (____)

---

**2.3** | **Priority creditor's name and mailing address**
DELAWARE SECRETARY OF STATE, DIVISION OF CORPORATIONS
PO BOX 5509
BINGHAMTON, NY 13902-5509

**As of the petition filing date, the claim is:** $ ____ Undetermined    $ ____ Undetermined
*Check all that apply.*
☒ Contingent
☒ Unliquidated
☐ Disputed

**Date or dates debt was incurred**
Undetermined

**Basis for the claim:**
Tax Claim

**Last 4 digits of account number** ___ ___ ___ ___

**Is the claim subject to offset?**
☒ No
☐ Yes

**Specify Code subsection of PRIORITY unsecured claim:** 11 U.S.C. § 507(a) (____)

Debtor     XTR Midstream, LLC
           _____          Case number *(if known)*  20-11557
           Name                                        _____

| **Part 1.** | **Additional Page** |
|---|---|

| Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page. If no additional PRIORITY creditors exist, do not fill out or submit this page. | **Total claim** | **Priority amount** |
|---|---|---|

| 2.4 | **Priority creditor's name and mailing address** | $ Undetermined | $ Undetermined |
|---|---|---|---|

WYOMING SECRETARY OF STATE
HERSCHLER BUILDING EAST
SUITE 101
122 WEST 25TH STREET
CHEYENNE, WY 82002-0020

**As of the petition filing date, the claim is:**
*Check all that apply.*

☒ Contingent
☒ Unliquidated
☐ Disputed

**Date or dates debt was incurred**
Undetermined

**Basis for the claim:**
Environmental and Business Fees and Taxes

**Last 4 digits of account number**

**Is the claim subject to offset?**
☒ No
☐ Yes

**Specify code subsection of PRIORITY unsecured claim:** 11 U.S.C. § 507(a) ()

| Debtor | XTR Midstream, LLC | Case number (if known) | 20-11557 |
|---|---|---|---|
| | Name | | |

| **Part 2:** | **List All Creditors with NONPRIORITY Unsecured Claims** |
|---|---|

3. List in alphabetical order all of the creditors with nonpriority unsecured claims. If the debtor has more than 6 creditors with nonpriority unsecured claims, fill out and attach the Additional Page of Part 2.

**Amount of claim**

**3.1** Nonpriority creditor's name and mailing address
ANADARKO E&P ONSHORE, LLC
DALLAS, TX 75373-0875

As of the petition filing date, the claim is:
Check all that apply.
☒ Contingent
☒ Unliquidated
☒ Disputed

Basis for the claim: Litigation Claim - Codefendant - Case #2019CV000069

Date or dates debt was incurred     Undetermined

Last 4 digits of account number     ___ ___ ___ ___

Is the claim subject to offset?
☐ No
☐ Yes

$                              Undetermined

**3.2** Nonpriority creditor's name and mailing address
ARB MIDSTREAM, LLC
DENVER, CO 80202

As of the petition filing date, the claim is:
Check all that apply.
☒ Contingent
☒ Unliquidated
☒ Disputed

Basis for the claim: Litigation Claim - Codefendant - Case #2019CV000069

Date or dates debt was incurred     Undetermined

Last 4 digits of account number     ___ ___ ___ ___

Is the claim subject to offset?
☐ No
☐ Yes

$                              Undetermined

**3.3** Nonpriority creditor's name and mailing address
EXTRACTION OIL & GAS, INC.
370 17TH STREET
SUITE 5300
DENVER, CO 80202

As of the petition filing date, the claim is:
Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: Intercompany Payable

Date or dates debt was incurred     Undetermined

Last 4 digits of account number     ___ ___ ___ ___

Is the claim subject to offset?
☐ No
☐ Yes

$                           27,078,318.28

**3.4** Nonpriority creditor's name and mailing address
EXTRACTION OIL & GAS, INC.
DENVER, CO 80202

As of the petition filing date, the claim is:
Check all that apply.
☒ Contingent
☒ Unliquidated
☒ Disputed

Basis for the claim: Litigation Claim - Codefendant - Case #2019CV000069

Date or dates debt was incurred     Undetermined

Last 4 digits of account number     ___ ___ ___ ___

Is the claim subject to offset?
☐ No
☐ Yes

$                              Undetermined

**3.5** Nonpriority creditor's name and mailing address
JANIS BUTTERFIELD
C/O KATHERINE L.T. MERLIN
3100 ARAPAHOE AVE., STE.410
BOULDER, CO 80302

As of the petition filing date, the claim is:
Check all that apply.
☒ Contingent
☐ Unliquidated
☒ Disputed

Basis for the claim: Litigation Claim - Case #2019CV000069

Date or dates debt was incurred     Undetermined

Last 4 digits of account number     ___ ___ ___ ___

Is the claim subject to offset?
☐ No
☐ Yes

$                              Undetermined

**3.6** Nonpriority creditor's name and mailing address
PATRICIA VARRA
PARKER, CO 80138

As of the petition filing date, the claim is:
Check all that apply.
☒ Contingent
☒ Unliquidated
☒ Disputed

Basis for the claim: Litigation Claim - Codefendant - Case #2019CV000069

Date or dates debt was incurred     Undetermined

Last 4 digits of account number     ___ ___ ___ ___

Is the claim subject to offset?
☐ No
☐ Yes

$                              Undetermined

Debtor   XTR Midstream, LLC
_____
Name

Case number *(if known)* 20-11557

---

| **Part 2:** | **Additional Page** |
| --- | --- |

Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page. If no additional NONPRIORITY creditors exist, do not fill out or submit this page.

**Amount of claim**

---

**3.7** | **Nonpriority creditor's name and mailing address** | $ Undetermined

STEPHANIE NILSEN
C/O KATHERINE L.T. MERLIN
3100 ARAPAHOE AVE., STE.410
BOULDER, CO 80302

**As of the petition filing date, the claim is:**
*Check all that apply.*

- ☒ Contingent
- ☒ Unliquidated
- ☒ Disputed

**Basis for the claim:** Litigation Claim - Case #2019CV000069

**Date or dates debt was incurred** Undetermined

**Last 4 digits of account number**

**Is the claim subject to offset?**
- ☐ No
- ☐ Yes

---

**3.8** | **Nonpriority creditor's name and mailing address** | $ Undetermined

TROY OWENS
DENVER, CO 80218

**As of the petition filing date, the claim is:**
*Check all that apply.*

- ☒ Contingent
- ☒ Unliquidated
- ☒ Disputed

**Basis for the claim:** Litigation Claim - Codefendant - Case #2019CV000069

**Date or dates debt was incurred** Undetermined

**Last 4 digits of account number**

**Is the claim subject to offset?**
- ☐ No
- ☐ Yes

---

**3.9** | **Nonpriority creditor's name and mailing address** | $714,739,802.66

WELLS FARGO BANK, NATIONAL ASSOCIATION
ATTENTION: CORPORATE, MUNICIPAL AND ESCROW SERVICES
1445 ROSS AVENUE
SUITE 4300
DALLAS, TX 75202

**As of the petition filing date, the claim is:**
*Check all that apply.*

- ☒ Contingent
- ☒ Unliquidated
- ☐ Disputed

**Basis for the claim:** Guarantor to 5.625% Senior Notes due 2026

**Date or dates debt was incurred** Undetermined

**Last 4 digits of account number**

**Is the claim subject to offset?**
- ☐ No
- ☐ Yes

---

**3.10** | **Nonpriority creditor's name and mailing address** | $417,126,388.89

WELLS FARGO BANK, NATIONAL ASSOCIATION
ATTENTION: CORPORATE, MUNICIPAL AND ESCROW SERVICES
1445 ROSS AVENUE
SUITE 4300
DALLAS, TX 75202

**As of the petition filing date, the claim is:**
*Check all that apply.*

- ☒ Contingent
- ☒ Unliquidated
- ☐ Disputed

**Basis for the claim:** Guarantor to 7.375% Senior Notes due 2024

**Date or dates debt was incurred** Undetermined

**Last 4 digits of account number**

**Is the claim subject to offset?**
- ☐ No
- ☐ Yes

---

**3.11** | **Nonpriority creditor's name and mailing address** | $3,018,743.36

XOG SERVICES, LLC
370 17TH STREET
SUITE 5300
DENVER, CO 80202

**As of the petition filing date, the claim is:**
*Check all that apply.*

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Basis for the claim:** Intercompany Payable

**Date or dates debt was incurred** Undetermined

**Last 4 digits of account number**

**Is the claim subject to offset?**
- ☐ No
- ☐ Yes

---

Debtor    XTR Midstream, LLC
         Name            Case number *(if known)* 20-11557

| Part 3: | List Others to Be Notified About Unsecured Claims |
| --- | --- |

**4.   List in alphabetical order any others who must be notified for claims listed in Parts 1 and 2.** Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for unsecured creditors.

**If no others need to be notified for the debts listed in Parts 1 and 2, do not fill out or submit this page. If additional pages are needed, copy the next page.**

| Name and mailing address | On which line in Part 1 or Part 2 is the related creditor (if any) listed? | Last 4 digits of account number, if any |
| --- | --- | --- |
| 1  STEPHANIE NILSEN AND JANIS BUTTERFIELD<br>22235 COUNTY RD. 3<br>BERTHOUD, CO 80513 | Line 5<br><br>☐Not listed. Explain _____ | |
| 2  STEPHANIE NILSEN AND JANIS BUTTERFIELD<br>22235 COUNTY RD. 3<br>BERTHOUD, CO 80513 | Line 7<br><br>☐Not listed. Explain _____ | |

Debtor    XTR Midstream, LLC
Name

Case number *(if known)* 20-11557

| Part 4: | Total Amounts of the Priority and Nonpriority Unsecured Claims |
|---|---|

5. **Add the amounts of priority and nonpriority unsecured claims.**

| | | | **Total of claim amounts** |
|---|---|---|---|
| 5a. **Total claims from Part 1** | 5a. | $ | 0.00 |
| | | | + undetermined amounts |
| 5b. **Total claims from Part 2** | 5b. **+** | $ | 1,161,963,253.19 |
| | | | + undetermined amounts |
| 5c. **Total of Parts 1 and 2**<br>Lines 5a + 5b = 5c. | 5c. | $ | 1,161,963,253.19 |
| | | | + undetermined amounts |

**Fill in this information to identify the case:**

Debtor name   XTR Midstream, LLC

United States Bankruptcy Court for the: _____ District of  Delaware

Case number (If known):   20-11557 _____   Chapter   11

☐ Check if this is an
amended filing

## Official Form 206G

# Schedule G: Executory Contracts and Unexpired Leases   12/15

**Be as complete and accurate as possible. If more space is needed, copy and attach the additional page, numbering the entries consecutively.**

**1. Does the debtor have any executory contracts or unexpired leases?**

☐ No. Check this box and file this form with the court with the debtor's other schedules. There is nothing else to report on this form.

☒ Yes. Fill in all of the information below even if the contracts or leases are listed on *Schedule A/B: Assets - Real and Personal Property* (Official Form 206A/B).

| 2. List all contracts and unexpired leases | | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|---|
| **2.1** | **State what the contract or lease is for and the nature of the debtor's interest**<br><br>**State the term remaining**<br><br>**List the contract number of any government contract** | Pipeline Operating Agreement Martin Gathering System | EXTRACTION OIL & GAS, INC.<br>370 17TH STREET<br>SUITE 5300<br>DENVER, CO 80202 |
| **2.2** | **State what the contract or lease is for and the nature of the debtor's interest**<br><br>**State the term remaining**<br><br>**List the contract number of any government contract** | Pipeline Operating Agreement Aims College Gathering System, Dated: 01/01/2016 | EXTRACTION OIL & GAS, INC.<br>370 17TH STREET<br>SUITE 5300<br>DENVER, CO 80202 |
| **2.3** | **State what the contract or lease is for and the nature of the debtor's interest**<br><br>**State the term remaining**<br><br>**List the contract number of any government contract** | Master Subscription Agreement, Dated: 07/18/2016 | S&P GLOBAL PLATTS (BUSINESS UNIT OF S&P GLOBAL INC.)<br>ATTN: S&P GLOBAL PLATTS CUSTOMER SERVICES<br>TWO PENN PLAZA<br>NEW YORK, NY 10121 |
| **2.4** | **State what the contract or lease is for and the nature of the debtor's interest**<br><br>**State the term remaining**<br><br>**List the contract number of any government contract** | Master Subscription Agreement, Dated: 08/04/2016 | S&P GLOBAL PLATTS (BUSINESS UNIT OF S&P GLOBAL INC.)<br>ATTN: S&P GLOBAL PLATTS CUSTOMER SERVICES<br>TWO PENN PLAZA<br>NEW YORK, NY 10121 |
| **2.5** | **State what the contract or lease is for and the nature of the debtor's interest**<br><br>**State the term remaining**<br><br>**List the contract number of any government contract** | Master Subscription Agreement - Platts Services Attachment, Dated: 08/08/2016 | S&P GLOBAL PLATTS (BUSINESS UNIT OF S&P GLOBAL INC.)<br>ATTN: S&P GLOBAL PLATTS CUSTOMER SERVICES<br>TWO PENN PLAZA<br>NEW YORK, NY 10121 |

Debtor     XTR Midstream, LLC                          Case number *(if known)*  20-11557
                    Name

 **Additional Page if Debtor Has More Executory Contracts or Unexpired Leases**

**Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page.**

| List all contracts and unexpired leases | | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|---|
| 2.6 | State what the contract or lease is for and the nature of the debtor's interest | Email re: Discount and June Contract, Dated: 04/13/2020 | THE COMPLIANCE GROUP, INC.<br>ATTN: STEPHEN HERNANDEZ, DENVER OPERATIONS MANAGER<br>14884 HWY. 105 SUITE 100<br>MONTGOMERY, TX 77388 |
| | State the term remaining | | |
| | List the contract number of any government contract | | |
| 2.7 | State what the contract or lease is for and the nature of the debtor's interest | Indenture - 7.375% Senior Notes Due 2024 - Guarantor, All Related Amendments and Documents, Dated: 08/01/2017 | WELLS FARGO BANK, NATIONAL ASSOCIATION<br>ATTENTION: CORPORATE, MUNICIPAL AND ESCROW SERVICES<br>1445 ROSS AVENUE<br>SUITE 4300<br>DALLAS, TX 75202 |
| | State the term remaining | | |
| | List the contract number of any government contract | | |
| 2.8 | State what the contract or lease is for and the nature of the debtor's interest | Indenture - 5.625% Senior Notes Due 2026 - Guarantor, All Related Amendments and Documents, Dated: 01/25/2018 | WELLS FARGO BANK, NATIONAL ASSOCIATION<br>ATTENTION: CORPORATE, MUNICIPAL AND ESCROW SERVICES<br>1445 ROSS AVENUE<br>SUITE 4300<br>DALLAS, TX 75202 |
| | State the term remaining | | |
| | List the contract number of any government contract | | |
| 2.9 | State what the contract or lease is for and the nature of the debtor's interest | Guarantor to the Reserve-Based Lending Facility and associated Commitment, Letters of Credit, Fronting Fees, and all related Amendments and Documents, Dated: 8/16/2017 | WELLS FARGO BANK, NATIONAL ASSOCIATION<br>ATTN: JOE ROTTINGHAUS<br>1700 LINCOLN ST<br>6TH FLOOR<br>DENVER, CO 80203 |
| | State the term remaining | | |
| | List the contract number of any government contract | | |

**Fill in this information to identify the case:**

Debtor name  XTR Midstream, LLC

United States Bankruptcy Court for the: _____ District of Delaware

Case number (If known):   20-11557

☐ Check if this is an
amended filing

Official Form 206H

# Schedule H: Codebtors

12/15

Be as complete and accurate as possible. If more space is needed, copy the Additional Page, numbering the entries consecutively. Attach the Additional Page to this page.

1. **Does the debtor have any codebtors?**

   ☐ No. Check this box and submit this form to the court with the debtor's other schedules. Nothing else needs to be reported on this form.

   ☒ Yes

2. **In Column 1, list as codebtors all of the people or entities who are also liable for any debts listed by the debtor in the schedules of creditors,** *Schedules D-G.* Include all guarantors and co-obligors. In Column 2, identify the creditor to whom the debt is owed and each schedule on which the creditor is listed. If the codebtor is liable on a debt to more than one creditor, list each creditor separately in Column 2.

| Column 1: **Codebtor** | | Column 2: **Creditor** | |
|---|---|---|---|
| **Name** | **Mailing address** | **Name** | **Check all schedules that apply:** |
| 2.1  Extraction Oil & Gas, Inc. | 370 17TH STREET SUITE 5300 DENVER, CO 80202 | WELLS FARGO BANK, NATIONAL ASSOCIATION | ☐ D<br>☒ E/F<br>☐ G |
| 2.2  Extraction Oil & Gas, Inc. | 370 17TH STREET SUITE 5300 DENVER, CO 80202 | WELLS FARGO BANK, NATIONAL ASSOCIATION | ☒ D<br>☐ E/F<br>☐ G |
| 2.3  Mountaintop Minerals, LLC | 370 17TH STREET SUITE 5300 DENVER, CO 80202 | WELLS FARGO BANK, NATIONAL ASSOCIATION | ☐ D<br>☒ E/F<br>☐ G |
| 2.4  Mountaintop Minerals, LLC | 370 17TH STREET SUITE 5300 DENVER, CO 80202 | WELLS FARGO BANK, NATIONAL ASSOCIATION | ☒ D<br>☐ E/F<br>☐ G |
| 2.5  Table Mountain Resources, LLC | 370 17TH STREET SUITE 5300 DENVER, CO 80202 | WELLS FARGO BANK, NATIONAL ASSOCIATION | ☐ D<br>☒ E/F<br>☐ G |
| 2.6  Table Mountain Resources, LLC | 370 17TH STREET SUITE 5300 DENVER, CO 80202 | WELLS FARGO BANK, NATIONAL ASSOCIATION | ☒ D<br>☐ E/F<br>☐ G |

Debtor    XTR Midstream, LLC
_____
Name

Case number *(if known)*  20-11557
_____

| | **Additional Page if Debtor Has More Codebtors** |
|---|---|

**Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page.**

| | Column 1: **Codebtor** | | Column 2: **Creditor** | |
|---|---|---|---|---|
| | **Name** | **Mailing address** | **Name** | *Check all schedules that apply:* |
| 2.7 | 7N, LLC | 370 17TH STREET SUITE 5300 DENVER, CO 80202 | WELLS FARGO BANK, NATIONAL ASSOCIATION | ❏ D  ☒ E/F  ❏ G |
| 2.8 | 7N, LLC | 370 17TH STREET SUITE 5300 DENVER, CO 80202 | WELLS FARGO BANK, NATIONAL ASSOCIATION | ☒ D  ❏ E/F  ❏ G |
| 2.9 | 8 North, LLC | 370 17TH STREET SUITE 5300 DENVER, CO 80202 | WELLS FARGO BANK, NATIONAL ASSOCIATION | ❏ D  ☒ E/F  ❏ G |
| 2.10 | 8 North, LLC | 370 17TH STREET SUITE 5300 DENVER, CO 80202 | WELLS FARGO BANK, NATIONAL ASSOCIATION | ☒ D  ❏ E/F  ❏ G |
| 2.11 | Axis Exploration, LLC | 370 17TH STREET SUITE 5300 DENVER, CO 80202 | WELLS FARGO BANK, NATIONAL ASSOCIATION | ❏ D  ☒ E/F  ❏ G |
| 2.12 | Axis Exploration, LLC | 370 17TH STREET SUITE 5300 DENVER, CO 80202 | WELLS FARGO BANK, NATIONAL ASSOCIATION | ☒ D  ❏ E/F  ❏ G |
| 2.13 | XOG Services, LLC | 370 17TH STREET SUITE 5300 DENVER, CO 80202 | WELLS FARGO BANK, NATIONAL ASSOCIATION | ❏ D  ☒ E/F  ❏ G |
| 2.14 | XOG Services, LLC | 370 17TH STREET SUITE 5300 DENVER, CO 80202 | WELLS FARGO BANK, NATIONAL ASSOCIATION | ☒ D  ❏ E/F  ❏ G |
| 2.15 | Extraction Finance Corp. | 370 17TH STREET SUITE 5300 DENVER, CO 80202 | WELLS FARGO BANK, NATIONAL ASSOCIATION | ❏ D  ☒ E/F  ❏ G |
| 2.16 | Extraction Finance Corp. | 370 17TH STREET SUITE 5300 DENVER, CO 80202 | WELLS FARGO BANK, NATIONAL ASSOCIATION | ☒ D  ❏ E/F  ❏ G |

<table>
<tr><td colspan="2"><strong>Fill in this information to identify the case and this filing:</strong></td></tr>
</table>

Debtor Name __XTR Midstream, LLC_____

United States Bankruptcy Court for the: _____ District of Delaware

Case number (*If known*): __20-11557_____

## Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors    12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date.  Bankruptcy Rules 1008 and 9011.

**WARNING -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.**

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

- ☒ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)

- ☒ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)

- ☒ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

- ☒ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)

- ☒ *Schedule H: Codebtors* (Official Form 206H)

- ☒ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)

- ☐ Amended *Schedule* _____

- ☐ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)

- ☐ Other document that requires a declaration_____

I declare under penalty of perjury that the foregoing is true and correct.

Executed on __07/31/2020__          ✗ /s/ Tom L. Brock
           MM / DD / YYYY          Signature of individual signing on behalf of debtor

                              Tom L. Brock
                              Printed name

                              Vice President, Chief Accounting Officer
                              Position or relationship to debtor